SARAH R. NICHOLS (SBN 233099)
sarah.nichols@ogletree.com
CAROLYN B. HALL (SBN 212311)
carolyn.hall@ogletree.com
OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.
Steuart Tower, Suite 1300
One Market Plaza
San Francisco, CA 94105
Telephone: 415.442.4810
Facsimile: 415.442.4870

LACEY RAINWATER (SBN 294710)
lacey.rainwater@ogletree.com
OGLETREE, DEAKINS, NASH,
  SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone: 213.239.9800
Facsimile: 213.239.9045

Attorneys for Defendant
UMPQUA BANK

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANI AMIRIAN, individually, and on behalf of all other members of the general public similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>UMPQUA HOLDINGS COMPANY D/B/A UMPQUA BANK; an unknown business entity; and DOES 1 THROUGH 100, inclusive,<br><br>Defendants. | Case No. 17-7574<br><br>**NOTICE OF REMOVAL**<br><br>[*Los Angeles County Superior Court Case No. BC 674115*]<br><br>Action Filed: August 30, 2017<br>Date Removed: October 16, 2017<br>Trial Date: None Set |

Case No. 17-7574

NOTICE OF REMOVAL

**TO THE CLERK OF THE ABOVE-ENTITLED COURT AND PLAINTIFF ANI AMIRIAN AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** defendant UMPQUA BANK ("Defendant" or "Umpqua Bank"), by and through undersigned counsel, hereby removes this action from the Los Angeles County Superior Court to the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453. Defendant Umpqua Bank does so on the grounds that: (1) there are at least 100 class members in the purported class; (2) the amount in controversy exceeds the jurisdictional minimum; (3) diversity of citizenship exists between plaintiff Ani Amirian ("Plaintiff") and Defendant; and (4) the foregoing facts were true when Plaintiff filed her complaint and remain true as of this filing:

1. On August 30, 2017, Plaintiff Ani Amirian filed a Complaint in the Superior Court of the State of California, County of Los Angeles, captioned *Ani Amirian, individually, and on behalf of all other members of the general public similarly situated, vs. Umpqua Holdings Company d/b/a Umpqua Bank, an unknown business entity; and Does 1 through 100, inclusive*, Case No. BC 674115.  The Complaint purports to assert claims for: (1) Unpaid Overtime; (2) Failure to Provide Meal Breaks; (3) Failure to Provide Rest Breaks; (4) Unpaid Minimum Wages; (5) Failure to Pay Wages Upon Termination; (6) Wages Not Timely Paid During Employment; (7) Non-Compliant Wage Statements; (8) Failure to Keep Requisite Payroll Records; (9) Unreimbursed Business Expenses; and Unfair Business Practices (Cal. Bus. & Prof. Code §§ 17200, *et seq*.).

2. Plaintiff served Defendant with the Complaint on September 15, 2017. True and correct copies of the Complaint and Civil Case Cover Sheet are attached hereto as <u>Exhibit A</u>.  Defendant is unaware of there being any other documents on file with the Los Angeles County Superior Court in this action.  This Notice of Removal is timely filed within 30 days of service of the Complaint upon Defendant.

3. The Superior Court of California, County of Los Angeles, is located

within the territory of United States District Court for the Central District of California. Therefore, venue for purposes of removal is proper pursuant to 28 U.S.C. 84(c)(2) because it is the "district and division embracing the place where such action is pending." 28 U.S.C. 1441(a).

4.     Under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"), federal district courts have original jurisdiction over a class action if (1) it involves 100 or more putative class members, (2) any class member is a citizen of a state different from any defendant, and (3) the aggregated controversy exceeds $5 million. 28 U.S.C. §§ 1332(d)(2) and (d)(6).  This action is one over which this Court has original jurisdiction under 28 U.S.C. §1332 and is one which may be removed by Defendant pursuant to 28 U.S.C. §§ 1441 and 1453, because: (1) the number of putative class members in the plaintiff class exceeds 100: (2) the amount in controversy exceeds $5 million: and (3) there exists minimal diversity between the plaintiffs and defendant.  28 U.S.C. § 1332(d)(2), (6).

5.     <u>The putative class comprises more than 100 members</u>.  Umpqua Bank "employed Plaintiff as an hourly-paid, non-exempt employee from approximately November 2016 to approximately May 2017 . . . in the County of Los Angeles." (Complaint ¶ 20.)  Plaintiff seeks to bring this action on behalf of "[a]ll current and former hourly-paid or non-exempt employees who have been employed by Defendants within the State of California at any time during the period from four years prior to the filing of this Complaint to final judgment" ("Proposed Class"). (Complaint ¶ 14.) Plaintiff also alleges a "SUBCLASS A" consisting of all Proposed Class members "who earned shift differential pay, commissions, non-discretionary performance/incentive pay which was not used to calculate the regular rate of pay used to calculate the overtime rate for the payment of overtime wages." (*Id.*) Defendant has collected records relating to the alleged putative class and those records show that Defendant employed at least approximately 861 hourly paid non-exempt employees in California from August 30, 2013 to the present, and these

individuals are potentially members of the putative class.  Therefore, this action is a class action pursuant to 28 U.S.C. § 1332(d).

6. <u>Minimal diversity exists between the parties</u>.  The named plaintiff is alleged to be a citizen of California.  (Complaint, ¶ 5.)  Members of the putative class, who are or were employed in California, are presumed to be primarily citizens of the State of California.  For diversity purposes, a person is a "citizen" of the state in which he is domiciled.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  Defendant Umpqua Bank was, at the time of the filing of this action, and still is, a community bank organized under the laws of Oregon.  Umpqua Bank is a wholly owned operating subsidiary of Umpqua Holdings Corporation, a financial holding company organized under the laws of Oregon. Umpqua Holdings Corporation has its principal place of business in Portland, Oregon. Umpqua Bank has its principal place of business in Portland, Oregon. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." Umpqua Bank's principal place of business is located in the state of Oregon because its headquarters, and its executive and senior management personnel, as well as its primary management operations, are currently located in Oregon. *Hertz Corp. v. Friend*, 130 S.Ct. 1181 (2010) (in determining the principal place of business of a corporation for purposes of diversity jurisdiction, the "'principal place of business' [as contained in § 1332(c)] is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities.").  Accordingly, Defendant is not a citizen of the State of California.  Because Plaintiff is a resident of California and Defendant is not a resident of California, the minimal diversity requirement of 28 U.S.C. § 1332(d)(2)(A) is satisfied.

7. <u>The amount in controversy for all putative class members exceeds $5 million</u>.  In her Complaint, Plaintiff alleges no specific amount in controversy.  This failure of the Complaint to specify the total amount of monetary relief sought by

Plaintiff does not deprive this Court of jurisdiction, however. *White v. J.C. Penny Life Ins. Co.*, 861 F.Supp. 25, 26 (S.D. W.Va.1994) (defendant may remove suit to federal court notwithstanding the failure of Plaintiff to plead a specific dollar amount in controversy; if the rules were otherwise, "any Plaintiff could avoid removal simply by declining . . . to place a specific dollar claim upon its claim."). Rather, to come under CAFA jurisdiction, Defendant simply needs to establish by a preponderance of the evidence that Plaintiff's claims exceed the jurisdictional minimum. *Rodriguez v. AT&T Mobility Services, LLC*, 728 F.3d 975, 977 (9th Cir. 2013), citing *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345 (2013); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996); *Singer v. State Farm Mutual Auto Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007) (in CAFA removal actions, where the amount in controversy is unclear from the face of the complaint, defendant must produce underlying facts showing it is more likely than not that the amount in controversy exceeds $5 million).

8.  While Defendant denies the validity of Plaintiff's claims and requests for relief and does not concede in any way that the allegations of the Complaint are accurate or that Plaintiff is entitled to any of the requested relief, the facial allegations in the Complaint and the *alleged damages* of Plaintiff exceed the jurisdictional minimum. *Luckett v. Delta Airlines, Inc.,* 171 F.3d 295, 298 (5th Cir. 1999) (finding that facts presented in notice of removal, combined with plaintiff's allegations, were sufficient to support finding of jurisdiction); *DeAguillar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995) (stating that "defendant can show by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional amount"); accord *Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992); *White v. FCI USA, Inc.*, 319 F.3d 672, 674 (5th Cir. 2003) (facially apparent from the lengthy list of damages, combined with a claim for attorney's fees, that plaintiff's claim exceeded the jurisdictional threshold).

9. A notice of removal need contain only a "short and plain statement" of the grounds for removal – no evidentiary submissions are required. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 551, 553 (2014) (quoting 28 U.S.C. § 1446(a)). In removing an action to the U.S. District Court, a defendant's allegations as to the amount in controversy "should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee*, 135 S.Ct. at 553. Defendant's notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 554.

10. In determining the amount in controversy for CAFA, all potential damages based on the claims in the complaint, as well as attorney's fees, are included. *Guglielmino*, 506 F.3d at 701 (unspecified attorney's fees are appropriately counted toward the amount in controversy in CAFA removal actions); *Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, *3 (E.D. Cal., May 1, 2007) ("In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiffs on all claims made in the complaint."). As set forth and described in more detail below, the amount in controversy is at least **$5,244,531**, which satisfies CAFA's jurisdictional prerequisite.

| Claim | Amount in Controversy |
|---|---|
| Failure to Pay All Overtime Wages | $155,565 |
| Failure to Pay All Meal Period Premium Pay | $1,323,000 |
| Failure to Pay All Rest Break Premium Pay | $1,323,000 |
| Wage Statement Violations | $927,500 |
| Waiting Time Penalties | $995,760 |
| Attorneys' Fees | $519,706 |
| Total | $5,244,531 |

11. This lawsuit arises from Plaintiff's employment at Umpqua Bank. Plaintiff's Complaint asserts causes of action against Defendant for alleged

violations of California Labor Code §§ 201, 202, 203, 204, 226, 226.7, 510, 512, 558, 1174, 1194, 1197, 1197.1, 1198, 2800, 2802, and California Business and Professions Code § 17200.  (Complaint, ¶¶43-94.)  Plaintiff seeks damages for unpaid minimum and overtime wages, unpaid statutory premium pay for meal period violations, unpaid statutory premium pay for rest break violations, restitution for unpaid overtime wages, failure to furnish accurate itemized wage statements, failure to reimburse business expenses,[1] waiting time penalties, and attorney's fees, on behalf of herself and the putative class members for the alleged violations of the foregoing statutes.  (Prayer for Relief.)

12. Defendant Umpqua Bank currently employs at least 435 non-exempt employees in California and has consistently employed approximately at least 350 non-exempt employees in California each year since August 30, 2013. Approximately 461 non-exempt employees terminated employment in California between August 30, 2014 and the present.

13. Plaintiff Ani Amirian's hourly wage rate throughout her employment was $19.50.

14. In support of her First Cause of Action, Plaintiff alleges that Defendant "intentionally and willfully failed to pay overtime wages to Plaintiff and the other class members, including failing to properly calculating the overtime rate, during the time period(s) upon which Plaintiff and the other class members worked in excess of eight (8) hours in a day, and/or in excess of forty (40) hours in a week." (Complaint ¶ 42.)  On behalf of herself and putative class members, Plaintiff seeks "the unpaid balance of the full amount of overtime premiums owing, including interest thereon, penalties, attorneys' fees and costs of suit pursuant to the mandate of California

---

[1] The Complaint does not allege sufficient facts for Defendant to make a good faith estimate of the damages Plaintiff alleges as to the expense reimbursement claim. Although Defendant has not included this estimate in supporting its removal, such amounts are clearly in controversy and would further support jurisdiction under CAFA.

1 Labor Code section 1194." (Complaint ¶ 44.)

2     15.    In support of her Second Cause of Action, Plaintiff alleges that "Defendants failed to provide Plaintiff and the other class members the required rest and meal periods during the relevant time period" (Complaint ¶ 31) and that "Defendants intentionally and willfully required Plaintiff and the other class members to work during meal periods and failed to compensate Plaintiff and the other class members the full meal period premium for work performed during meal periods." (Complaint ¶ 49.) On behalf of herself and putative class members, Plaintiff seeks "one additional hour of pay at the employee's regular rate of compensation for each work day the meal [ ] period is not provided." (Complaint ¶ 52.)

    16.    In support of her Third Cause of Action, Plaintiff alleges that "Defendants failed to provide Plaintiff and the other class members the required rest and meal periods during the relevant time period" (Complaint ¶ 31), that "Defendants required Plaintiff and other class members to work four (4) or more hours without authorizing or permitting a ten (1) minute rest period per each four (4) hour period worked" and that "Defendants willfully required Plaintiff and the other class members to work during rest periods and failed to pay Plaintiff and the other class members the full rest period premium for work performed during rest periods." (Complaint ¶¶ 56-57.) On behalf of herself and putative class members, Plaintiff seeks "one additional hour of pay at the employee's regular hourly rate of compensation for each work day the rest period was not provided." (Complaint ¶ 60.)

    17.    In support of her Seventh Cause of Action, Plaintiff alleges that Defendant "failed to provide Plaintiff and other class members with complete and accurate wage statements" including "the failure to include the total number of hours worked by Plaintiff and other class members" and that as a result of such failure "Plaintiff and other class members have suffered injury," (Complaint ¶¶ 76-77.) On behalf of herself and putative class members, Plaintiff seeks "the greater of their

actual damages caused by Defendants' failure to comply with Labor Code section 226(a), or an aggregate penalty not exceeding four thousand dollars per employee." (Complaint ¶ 79.)

18. Based upon (i) unpaid overtime; (ii) unpaid meal period premium pay; (iii) unpaid rest break premium pay; (iv) penalties for wage statement violations; (v) waiting time penalties; and (vi) attorney's fees, the associated potential amount in controversy, as alleged and claimed by Plaintiff, is set forth below.

19. As Plaintiff claims that Defendant caused Plaintiff and the putative class members to work overtime but did not compensate them at the proper overtime regular rate of pay for such hours (Complaint ¶ 42), Defendant assumes for the purpose of this calculation that each putative class member was underpaid 0.25 hour of overtime per *two-week pay period*. Based on this assumption and the putative class size, the amount in controversy for this claim is at least **$155,565**.[2] Assuming the lowest applicable state minimum wage of $9.00 per hour, this is conservatively calculated at $3.38 per pay period ($9.00 x 1.5 x 0.25 hours) multiplied by 46,025 pay periods. This calculation is actually higher due to the $1.00 increase in the California minimum wage (from $9.00 to $10.00) effective January 1, 2016. Based on Plaintiff's $19.50 hourly rate, the amount in controversy for this claim is at least **$336,558**. *See* Complaint, ¶ 16(b), "Plaintiff's claims . . . are typical of all other class members'".

20. As Plaintiff claims that Defendant failed to provide her and putative class members meal periods and failed to compensate Plaintiff and putative class members full meal period premium pay in violation of Labor Code sections 226.7 and 512(a) (Complaint ¶¶ 49-51), Defendant assumes for purposes of this calculation

---

[2] This assumption and calculation is quite conservative given Plaintiff's allegations that "Defendants failed to compensate Plaintiff and the other class members for all hours worked, missed, short, late, and/or interrupted meal periods and/or rest breaks" (Complaint ¶ 22) and that "Plaintiff and the other class members worked over eight (8) hours in a day, and/or over forty (40) hours in a week during their employment with Defendants." (Complaint ¶ 26.)

that each putative class member failed to be provided with a compliant meal period at least two times per week. Based on this assumption, the putative class size and assuming the lowest applicable state minimum wage of $9.00 per hour, the amount in controversy for the meal period premium pay for this claim is **$1,323,000**. This is calculated at $9.00 per hour x two occurrences per week x 73,500 weeks (based on at least 350 employees consistently working each week in the alleged class period). *See Tompkins v. C & S Wholesale Grocers, Inc.*, 2011 WL 2710288 (E.D. Cal. 2012) (finding that a four-year statute of limitations period applies to meal break claims pursuant to Labor Code Section 226.7 at the same time as an unfair competition claim pursuant to Cal. Bus. & Prof. Code Section 17200 because the "additional hour of pay" required as a premium wage is a restitutionary wage, which is recoverable under the Unfair Competition Law); *see also Doe v. D.M. Camp & Sons*, 2009 WL 921442, at *13 (E.D. Cal. Mar. 31, 2009 (same) (citing *Tomlinson v. Indymac Bank, F.S.B.*, 359 F.Supp.2d 891, 898 (C.D. Cal. 2005). Again, this calculation is actually higher due to the $1.00 increase in the California minimum wage (from $9.00 to $10.00) effective January 1, 2016. Based on Plaintiff's $19.50 hourly rate, the amount in controversy for this claim is at least **$2,866,500** on the grounds she contends her claims are typical of the claims of all other class members (Complaint ¶ 16(b).)

21. As Plaintiff claims that Defendant failed to authorize rest breaks for her and the putative class members and failed to compensate Plaintiff and putative class members full rest break premium pay in violation of Labor Code section 226.7 (Complaint ¶¶ 56-60), Defendant assumes for purposes of this calculation that each putative class member was not authorized a paid rest break at least two times per week. Based on this assumption, the putative class size and assuming the lowest applicable state minimum wage of $9.00 per hour, the amount in controversy for this claim is **$1,323,000**. This is calculated at $9.00 per hour x two occurrences per week x 73,500 weeks (based on at least 350 employees consistently working each week in

1 the alleged class period). Again, this calculation is actually higher due to the $1.00
2 increase in the California minimum wage (from $9.00 to $10.00) effective January 1,
3 2016. Based on Plaintiff's $19.50 hourly rate, the amount in controversy for this
4 claim is at least **$2,866,500**.

5      22.     Plaintiff claims that Defendant failed to furnish Plaintiff and the
6 putative class members with accurate itemized wage statements. (Seventh Cause of
7 Action; Complaint ¶¶ 75-80.) The applicable statute of limitations to recover
8 penalties under California Labor Code § 226(e) is one year. Code Civ. Proc. §
9 340(a). Umpqua Bank pays California employees every two weeks. If the allegations
10 of the Complaint and Plaintiff's legal theories are correct, each individual who
11 received an inaccurate itemized wage statement is entitled to statutory penalties of
12 $50 for the first pay period during which he or she was employed between August
13 30, 2016 and the present, and $100 for each subsequent pay period during that time.
14 (S*ee* Cal. Lab. Code § 226(e).) Based on Plaintiff's allegations, the amount in
15 controversy for failure to provide accurate itemized wage statements is **$927,500**.
16 This is calculated at 350 employees x $50 for the first pay period violation and 350
17 employees x $100 for 9,100 additional pay periods.

18      23.     Plaintiff claims waiting time penalties under Section 203 of the
19 California Labor Code. (Complaint ¶¶ 67-71.) As set forth in *Bolton v. U.S. Nursing*
20 *Corp.*, 2012 WL 529738, at *5, (N.D. Cal. Oct. 23, 2012), an employer may
21 establish the amount in controversy for a waiting time penalty claim pursuant to
22 California Labor Code Section 203 by: (1) assessing a minimum hourly rate based on
23 the regular rate applicable to the putative class; (2) multiplying the hourly rate by the
24 average hours worked per shift; (3) multiplying that number by the number of days
25 in the waiting time period; and (4) multiplying that number by the number of
26 terminated putative class members. Assuming the lowest applicable state minimum
27 wage of $9.00 per hour, if such penalties were awarded, and that at least
28 approximately 461 non-exempt employees were terminated in California between

10  Case No. 17-7574
NOTICE OF REMOVAL

August 30, 2014 and the present, the amount in controversy in relation to waiting time penalties is at least **$995,760.** Assuming the lowest applicable state minimum wage, this is conservatively calculated at $9.00 per hour x 8 hours x 30 days x 461 terminated employees. Again, this calculation is actually higher due to the $1.00 increase in the California minimum wage (from $9.00 to $10.00) effective January 1, 2016. Based on Plaintiff's $19.50 hourly rate, the amount in controversy for this claim is at least **$2,157,480**.

24.  Plaintiff seeks to recover attorney's fees for each of the causes of action and bases for recovery in the Complaint. (Complaint, Prayer for Relief.)  A realistic estimate of Plaintiff's potential attorneys' fees is 25% of the total recovery. *See Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504 at *4, fn8 (noting that "in California, where wage and hour class actions have settled prior to trial for millions of dollars, it is not uncommon for an attorneys' fee award to be in the realm of 25% to 30% of the settlement").  Because the amount in controversy for Plaintiff's claims for failure to pay overtime at one and one-half time times the regular rate, failure to provide accurate itemized wage statements and waiting time penalties is approximately **$2,078,825**, as detailed above, Plaintiff's attorney's fees must be estimated as approximately **$519,706**, which is the aggregate of 25% of the amounts in controversy for each of those claims.  It is well established that in determining whether a complaint meets the amount in controversy requirement, the Court should consider attorney's fees. *Bell v. Preferred Life*, 320 U.S. 238 (1943); *Goldberg v. C.P.C. Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982) (attorneys' fees may be taken into account to determine jurisdictional amounts); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696 at 701 (holding that attorney's fees must be included in determining the amount in controversy in CAFA removal actions); *Sanchez v. Wal-Mart Stores, Inc.*, 2007 WL 1345706 at *2 (finding that, even if a more conservative estimate of compensatory damages totaling less than $5,000,000 was appropriate, the addition of alleged attorney's fees should be included in determining the amount in

1 controversy).

2   25.   Based on the allegations in the Complaint; the damages, penalties and attorney's fees sought by Plaintiff; and the number of putative class members, as explained in detail above, the amount in controversy is greater than **$5,244,531**, which satisfies CAFA's jurisdictional prerequisite.

   26.   Although Defendant specifically denies Plaintiff's claims and denies that Plaintiff will recover any of the relief she seeks, it is clear from the scope of the relief sought that the amount in controversy arising from the relief Plaintiff seeks exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

   27.   In accordance with 28 U.S.C. § 1446(b), this Notice of Removal was filed within 30 days after the service on Defendant of a copy of the Complaint.

   In accordance with 28 U.S.C. § 1446(d), Defendant will provide written notice of removal of this action to Plaintiff, through her counsel of record, and file a copy of this Notice with the Los Angeles County Superior Court.

DATED: October 16, 2017

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ Carolyn B. Hall
SARAH R. NICHOLS
LACEY RAINWATER
CAROLYN B. HALL

Attorneys for Defendant
UMPQUA BANK

31327895.2