| Case No. | **CV 17-7574 FMO (FFMx)** | Date | **July 31, 2018** |
|---|---|---|---|
| Title | **Ani Amirian v. Umpqua Bank** | | |

| Present: The Honorable | Fernando M. Olguin, United States District Judge | |
|---|---|---|
| Vanessa Figueroa | None | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorney Present for Plaintiff(s): | Attorney Present for Defendant(s): | |
| None Present | None Present | |

**Proceedings:** (In Chambers) Order Remanding Action

     Having reviewed and considered all the briefing filed with respect to Plaintiff's Motion to Remand Pursuant to 28 U.S.C. § 1447 (Dkt. 10, "Motion"), the court concludes that oral argument is not necessary to resolve the Motion. See Fed. R. Civ. P. 78; Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001).

## BACKGROUND

     On August 30, 2017, plaintiff Ani Amirian ("Amirian" or "plaintiff") filed a class action Complaint in the Los Angeles County Superior Court against Umpqua Holdings Company dba Umpqua Bank ("Umpqua" or "defendant"). (See Dkt. 1, Notice of Removal ("NOR") at 1; Dkt. 1-1, NOR, Exhibit ("Exh.") A, ("Complaint") at 1). Plaintiff, a former employee of defendant, asserts various claims under California law: (1) unpaid overtime in violation of Cal. Labor Code §§ 510 & 1198; (2) failure to provide meal periods in violation of Cal. Labor Code §§ 226.7 & 512(a); (3) failure to provide rest periods in violation of Cal. Labor Code § 226.7; (4) unpaid minimum wages in violation of Cal. Labor Code §§ 1194, 1197 & 1197.1; (5) failure to pay wages upon termination in violation of Cal. Labor Code §§ 201 & 202; (6) waiting time penalties pursuant to Cal. Labor Code § 204; (7) non-compliant wage statements in violation of Cal. Labor Code § 226(a); (8) failure to keep requisite payroll records in violation of Cal. Labor Code § 1174(d); (9) unreimbursed business expenses in violation of Cal. Labor Code §§ 2800 & 2802; and, (10) unfair business practices in violation of Cal. Bus. & Prof. Code §§ 17200, et seq. (See Dkt. 1-1, Complaint at ¶¶ 20, 41-94). Plaintiff seeks to represent a class of persons who are or were employed by defendant as hourly-paid or non-exempt employees within the state of California. (See id. at ¶ 14). Plaintiff also seeks to represent a subclass of all current and former hourly-paid or non-exempt employees employed by defendant in California who earned shift differential pay, commissions, non-discretionary bonuses, non-discretionary incentive or performance pay that was not used to calculate their regular rate of pay. (See id.). Plaintiff seeks to recover unpaid wages, civil and statutory penalties, damages, premium wages, liquidated damages, interest and attorney's fees. (See id. at ECF 19-23, Prayer for Relief).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-7574 FMO (FFMx) | Date | July 31, 2018 |
|---|---|---|---|
| Title | Ani Amirian v. Umpqua Bank | | |

On October 16, 2017, defendant removed this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (See Dkt. 1, NOR at 1).

## LEGAL STANDARD

Removal of a civil action from the state court where it was filed is proper if the action might have originally been brought in federal court. See 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court[.]"). "CAFA provides expanded original diversity jurisdiction for class actions meeting the amount in controversy and minimal diversity and numerosity requirements set forth in 28 U.S.C. § 1332(d)(2)." United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co., 602 F.3d 1087, 1090-91 (9th Cir. 2010); see Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1195 (9th Cir. 2015) ("A CAFA-covered class action may be removed to federal court, subject to more liberalized jurisdictional requirements[.]"). Under CAFA, "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant[.]" 28 U.S.C. § 1332(d)(2).

"[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S.Ct. 547, 554 (2014). However, "under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 685 (9th Cir. 2006) (per curiam); see Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988) ("The burden of establishing federal jurisdiction is upon the party seeking removal[.]"). "A defendant seeking removal of a putative class action must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." Rodriguez v. AT&T Mobility Servs. LLC, 728 F.3d 975, 981 (9th Cir. 2013). "When plaintiffs favor state court and have prepared a complaint that does not assert the amount in controversy, or that affirmatively states that the amount in controversy does not exceed $5 million, if a defendant wants to pursue a federal forum under CAFA, that defendant in a jurisdictional dispute has the burden to put forward evidence showing that the amount in controversy exceeds $5 million, to satisfy other requirements of CAFA, and to persuade the court that the estimate of damages in controversy is a reasonable one." Ibarra, 775 F.3d at 1197. "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." Id. at 1198.

## DISCUSSION

In the NOR, defendant calculates the amount in controversy to be $5,244,531, slightly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 17-7574 FMO (FFMx)** | Date | **July 31, 2018** |
|---|---|---|---|
| Title | **Ani Amirian v. Umpqua Bank** | | |

above the $5 million jurisdictional minimum.  This amount consists of: (1) $155,565 in overtime wages; (2) $1,323,00 in meal period premium pay; (3)  $1,323,00 in rest period premium pay; (4) $927,500 in wage statement violations; (5) $995,760 in waiting time penalties; and (6) $519,706 for attorney's fees.[1]  (See Dkt. 1, NOR at 5).  Defendant puts forth a different amount in controversy in its Opposition, $5,643,822, (see Dkt. 15, Opposition at 23), which is higher than the amount set forth in its NOR.  This amount consists of:  (1) $ 168,786 in overtime wages; (2) $3,893,116 in combined meal period and rest period premium pay; (3) $424,000 in wage statement violations; (4) $807,778 in waiting time penalties; and (5) $350,141 in attorney's fees. (See id. at 23-24).

Plaintiff asserts that defendant fails to meet the $5 million jurisdictional threshold because its NOR is "devoid of any factual support[,]" "plucks numbers out of thin air to arrive at the amount in controversy[,]" and provides no evidentiary basis for its assumptions, instead relying on "conjecture" and "speculation[.]"  (See Dkt. 10, Motion at 1).  The court agrees.

As an initial matter, other than citing only Dart Cherokee, which does not support defendant's proposition, defendant has not provided any authority – nor is the court aware of any authority – stating that a plaintiff must submit evidence challenging the amount in controversy. (See, generally, Dkt. 15, Opposition at 11); see Townsend v. Brinderson Corp., 2015 WL 3970172, *3 (C.D. Cal. 2015) ("Contrary to [defendant's] contention, neither Dart Cherokee nor Ibarra mandate that a plaintiff must always submit evidence challenging the amount in controversy."). A plaintiff is required "to come forward with contrary evidence only when the removing defendant has first come forward with sufficient evidence to meet its initial burden."[2]  Townsend, 2015 WL 3970172, at *3; see Ruano v. Sears Roebuck & Co., 2015 WL 6758130, *2 (C.D. Cal. 2015) ("Plaintiffs can also submit evidence in opposition, but there is no requirement that they do so[.]") (citation omitted); Vitale v. Celadon Trucking Servs., 2015 WL 5824721, *2 (C.D. Cal. 2015) (same).  As this court previously noted, "[n]umerous cases after Dart Cherokee have concluded,

---

[1]  Defendant offers no evidence or argument with respect to plaintiff's other claims.  (See, generally, NOR).

[2]  Defendant points to Unutoa v. Interstate Hotels & Resorts, Inc., 2015 WL 898512, *2-3 (C.D. Cal. 2015), arguing that this case supports its assumptions, including the 100% violation rate, because plaintiff failed to submit evidence to contest such a violation rate.  (See Dkt. 15, Opposition at 12-14).  In Unutoa, however, the court found that the removing defendant had put forth sufficient evidence of the amount in controversy.  See 2015 WL 898512, at *3 (first finding the defendants' assumption of violation rates to be "sufficiently supported by [plaintiff's] allegations and Defendants' evidence" before noting that plaintiff had not offered an alternative).  Unutoa did not say that putting forth such evidence was required, nor did the court find that defendant satisfied its burden because the plaintiff failed to offer an alternative calculation.  The court declines to make such a finding here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-7574 FMO (FFMx) | Date | July 31, 2018 |
|---|---|---|---|
| Title | Ani Amirian v. Umpqua Bank | | |

either explicitly or implicitly, that while a plaintiff may rebut defendant's evidence with his or her own evidence, he or she need not do so in order to prevail on a motion to remand." Townsend, 2015 WL 3970172, at *3 (collecting cases). Once a defendant satisfies its "burden to put forward evidence showing that the amount in controversy exceeds $5 million," Ibarra, 775 F.3d at 1197, "the burden [then] shifts to plaintiff to produce evidence." Townsend, 2015 WL 3970172, at *3. Thus, the question remains whether defendant has satisfied its burden by a preponderance of the evidence to demonstrate that the amount in controversy satisfies the CAFA threshold. For the reasons set forth below, the court finds that it has not.

"CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." Ibarra, 775 F.3d at 1198. In addition, "courts disavow the use of a 100% violation rate when calculating the amount in controversy absent evidentiary support." Moreno v. Ignite Rest. Grp., 2014 WL 1154063, *5 (N.D. Cal. 2014); see, e.g., Letuligasenoa v. Int'l Paper Co., 2014 WL 2115246, *5 (N.D. Cal. 2014) (rejecting application of 100% violation rate where unsupported by the record); Marshall v. G2 Secure Staff, LLC, 2014 WL 3506608, *2 (C.D. Cal. 2014) ("[P]arties may not rely on the assumption that the 100-percent violation rule applies without supporting the assumption with evidence.") (emphasis omitted); Roth v. Comerica Bank, 799 F.Supp.2d 1107, 1129 (C.D. Cal. 2010) (concluding that cases allowing defendants to rely on unsupported assumptions of 100% violation rates "improperly shift the burden to plaintiff to refute speculative assertions of jurisdiction and establish that there is no jurisdiction").

Here, defendant has not put forth any competent evidence to support its assumptions and calculations. Defendant bases its purported number and rate of alleged labor law violations on the declaration of Deanna Clark ("Clark"), an Assistant Vice President HR Compliance Analyst. (See, generally, Dkt. 15-2, Declaration of Deanna Clark [] ("Clark Decl.")). Clark's declaration sets forth the number of employees who were "regularly" scheduled to work 40 hours per week and who had wage statements issued to them during the relevant time period. (See Dkt. 15-2, Clark Decl. at ¶¶ 3-11). Her declaration also provides average wage rates for the putative class members and plaintiff's wage rate at the time of separation. (See id. at ¶¶ 7-9). Clark's declaration further states that "all California non-exempt employees have been regularly scheduled to work at least 3.5 hours per day." (Id. at ¶ 6). Finally, Clark's declaration provides the approximate number of putative class members who left defendant's employment during the relevant time period. (See id. at ¶ 3).

As an initial matter, defendant's estimates of the number of potential class members, pay periods, and weeks with violations changed from the NOR to the Opposition. (Compare Dkt. 1, NOR at ¶¶ 19-23 (46,025 overtime pay periods, 350 employees with meal and rest period and wage statement claims, 461 class members with waiting time penalty claims), with Dkt. 15, Opposition at 16-22 (27,147 overtime pay periods, range of 233-303 employees per year with meal and rest period claims, 160 employees with wage statement claims, 203 class members with waiting time penalty claims)). Defendant provides no explanation for these differences. (See,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 17-7574 FMO (FFMx)** | Date | **July 31, 2018** |
|---|---|---|---|
| Title | **Ani Amirian v. Umpqua Bank** | | |

generally, Dkt. 15, Opposition; Dkt. 15-2, Clark Decl.). Defendant's failure to explain the basis for its shifting estimates causes the court to question the basis, validity, and accuracy of Clark's declaration and her calculations. See, e.g., Garcia v. Wal-Mart Stores, Inc., 207 F.Supp.3d 1114, 1123 (C.D. Cal. 2016) (stating that employer's declaration that used a different end date for calculations that differed from date case was removed "cause[s] the court to question the basis, validity, and accuracy of [employer's] declarations.").

In any event, irrespective of which numbers are used, defendant has not met its burden on removal.[3] First, Clark's declaration is insufficient. Clark states that the information in her declaration is based upon her "personal knowledge and on Defendant's business records." (Dkt. 15-2, Clark Decl. at ¶ 2). However, Clark does not sufficiently describe the source of her personal knowledge. See Casey v. Lewis, 4 F.3d 1516, 1527 (9th Cir. 1993) ("Conclusory [declarations] that do not affirmatively show personal knowledge of specific facts are insufficient."); AMCO Ins. Co. v. Madera Quality Nut LLC, 2006 WL 2091944, *5 (E.D. Cal. 2006) (stating that the "source of the [personal] knowledge must be disclosed" and that the "burden is on the proponent to establish personal knowledge to the extent that a reasonable trier of fact could believe that the witness had personal knowledge about the fact"). For example, Clark does not describe with any particularity which records she reviewed to arrive at the figures she provides, referring only to "payroll information" and "relevant payroll information[.]" (See Dkt. 15-2, Clark Decl. at ¶¶ 2-3). It is unclear which business records are included within the "payroll information" and "relevant payroll information" Clark reviewed. See, e.g., Lockhart v. Columbia Sportswear Co., 2016 WL 2743481, *4 (C.D. Cal. 2016) (finding declaration did not support CAFA removal due to its lack of specificity regarding the records reviewed); Brandon v. C.H. Robinson Co. Inc., 2014 WL 2624995, *3 (E.D. Cal. 2014) (finding declaration stating that it was likely that majority of employees worked a certain number of hours per week lacked foundation).

In reviewing the "summary-judgment-type evidence" required for a defendant to meet its burden on removal, see Ibarra, 775 F.3d at 1197, the court "can only consider admissible evidence[.]" Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002); see also Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge [and] set out facts that would be admissible in evidence[.]"). "In order to be considered by the court, documents must be authenticated by and attached to [a declaration] that meets the requirements of Fed. R. Civ. P. 56(e) and the [declarant] must be a person through whom the exhibits could be admitted into evidence." Canada v. Blain's Helicopters, Inc., 831 F.2d 920, 925 (9th Cir. 1987) (internal quotation marks omitted); see also Orr, 285 F.3d at 773 ("[U]nauthenticated documents cannot be considered[.]"); Bias v. Moynihan, 508 F.3d 1212, 1224 (9th Cir. 2007) ("Rule 56(e) of the Federal Rules of Civil Procedure requires that . . . [t]he documents . . . be authenticated and attached to a declaration wherein the declarant is the person

---

[3] For the sake of convenience, the court will use the numbers proffered in the Opposition.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-7574 FMO (FFMx) | Date | July 31, 2018 |
|---|---|---|---|
| Title | Ani Amirian v. Umpqua Bank | | |

through whom the exhibits could be admitted into evidence.") (internal quotation marks omitted). Clark's declaration neither attaches the records she reviewed nor attempts to establish that they are authentic. (See, generally, Dkt. 15-2, Clark Decl.); see Fed. R. Evid. 901 (requirements for authentication of evidence). For this reason alone, the court disregards the records and information referenced in Clark's declaration. See Canada, 831 F.2d at 925 (holding that the court cannot consider "documents which have not had a proper foundation laid to authenticate them"). "In short, the court declines to rely on the [Clark] declaration because it is simply not the 'summary-judgment-type evidence,' that is sufficient to support defendant's assumption[s.]" Garcia, 207 F.Supp.3d at 1123 (quoting Ibarra, 775 F.3d at 1197).

However, even assuming defendant had submitted admissible, summary-judgment-type evidence, the result would not change. In other words, Clark's declaration, even assuming it was admissible, provides no support for the assumptions defendant makes in its calculations. For example, defendant assumes at least: (1) 0.25 hour of overtime per pay period for each employee, (see Dkt. 1, NOR at ¶ 19; Dkt. 15, Opposition at 14-16); (2) two non-compliant meal periods per week per employee, (see Dkt. 1, NOR at ¶ 20; Dkt. 15, Opposition at 17-19); (3) two non-compliant rest periods per week per employee, (see Dkt. 1, NOR at ¶ 21; Dkt. 15, Opposition at 17-19); (4) a 100% violation rate for plaintiff's wage statement claims, (see Dkt. 1, NOR at ¶ 22; Dkt. 15, Opposition at 20-21); and (5) 100% violation rate for waiting time penalties. (See Dkt. 1, NOR at ¶ 23; Dkt. 15, Opposition at 21-22). None of these assumptions are supported by Clark's declaration – or any other evidence. (See, generally, Dkt. 15-2, Clark Decl.; Dkt. 1, NOR; Dkt. 15, Opposition). Indeed, despite having access to both "time and payroll information," Clark simply states she reviewed "payroll information" in preparation for her declaration. (See Dkt. 15-2, Clark Decl. at ¶ 2). Although defendant does not have the burden of proving its ultimate liability, it must provide evidence of the amount in controversy, which defendant has not done here. See, e.g., Marentes v. Key Energy Servs. Cal., Inc., 2015 WL 756516, *10 (E.D. Cal. 2015) ("Because [defendant] fails to provide facts supporting the calculations, Defendant has failed to carry the burden to demonstrate by a preponderance of the evidence that the amount of damages in controversy exceeds $5,000,000."); Moore v. Urban Outfitters Wholesale, Inc., 2014 WL 2212080, *2 (N.D. Cal. 2014) (holding, in wage and hour case, that "an estimation, which assumes time worked, estimates missed overtime per week without reference to actual workweeks worked, and estimates number of employees working at any one time, is unsupported by underlying facts, is speculative, and falls short of meeting the preponderance of the evidence burden"); see also Lewis v. Verizon Comm'cns, Inc., 627 F.3d 395, 400-01 (9th Cir. 2010) ("We employ a preponderance of the evidence standard when the complaint does not allege a specific amount in controversy.").[4]

---

[4] Defendant relies on Lewis for the proposition that "[o]nce the proponent of jurisdiction has explained plausibly how the stakes exceed $5 million, then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." (See Dkt. 15, Opposition at 9) (quoting 627 F.3d at 401) (internal alterations omitted). However, as the Lewis court explained, that is the standard for the Seventh Circuit. See 627 F.3d at 400-01 (quoting the Seventh Circuit

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 17-7574 FMO (FFMx)** | Date | **July 31, 2018** |
|---|---|---|---|
| Title | **Ani Amirian v. Umpqua Bank** | | |

Defendant has not provided any evidence, much less the "summary-judgment-type evidence," see Ibarra, 775 F.3d at 1197, to support the many assumptions it made in its calculations. See, e.g. Garibay v. Archstone Cmtys. LLC, 539 F.Appx. 763, 764 (9th Cir. 2013) (rejecting calculation of amount in controversy where only evidence provided was "a declaration by [defendants'] supervisor of payroll, which sets forth only the number of employees during the relevant period, the number of pay periods, and general information about hourly employee wages"); Ornelas v. Children's Place Retail Stores, Inc., 2013 WL 2468388, *4 (C.D. Cal. 2013) ("A declaration stating the number of employees who worked for Defendant during the years prior to this action, together with assumptions about these employees, is not sufficient to establish that it is more likely than not that the amount in controversy in this case exceeds $5 Million [sic]."); Tehrani v. Macys W. Stores, Inc., 2016 WL 1559085, *7 (C.D. Cal. 2016) ("By assuming that the same number of employees worked throughout the year and that those employees worked consistently on the same days throughout the year, when [defendant] had access to the accurate numbers, [defendant] has made an assumption not grounded in real evidence.") (internal quotation marks omitted).

Indeed, the only rationale defendant offers to support its assumptions are plaintiff's allegations. (See Dkt. 15, Opposition at 12-22). Defendant focuses on plaintiff's allegations of a "uniform policy" of wage abuse. (See id. at 20) (identifying allegation that defendant "failed to provide Plaintiff and the other class members with complete and accurate wage statements" as basis for assumptions). The relevant allegations state that "Defendants engaged in a uniform policy of wage abuse. . . . This uniform policy involved [] failing to pay [employees] for all hours worked, missed, short, late, and/or interrupted meal periods and rest breaks[.]." (Dkt. 1-1, Complaint at 27); see Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 449 (7th Cir. 2005) ("[P]art of the removing party's burden is to show not only what the stakes of the litigation could be, but also what they are given the plaintiff's actual demands.") (emphasis in original). Defendant assumes a 100% violation rate as to the wage statement claim, which would require that "every wage statement issued during the class period" be noncompliant. (See Dkt. 15, Opposition at 20). Defendant also assume a 100% violation rate as to waiting time penalties. (See id. at 21-22). In doing so, defendant relies on cases that have found it reasonable to assume a 100% violation rate based on the allegations in those complaints. (See id. at 13-14 & 18-20) (discussing, e.g., Unutoa, 2015 WL 898512, at *3, Stevenson v. Dollar Tree Stores, Inc., 2011 WL 4928753, *3-4 (C.D. Cal. 2017), and Muniz v. Pilot Travel Centers LLC, 2007 WL 1302504, *4 (E.D. Cal. 2007)).[5] However,

---

in defendant's cited sentence and noting that the Seventh Circuit applies "what may be a lower standard of proof" than the Ninth Circuit).

[5] The cases are either distinguishable or the court does not find them persuasive. See supra at note 2 (distinguishing Unutoa). Stevenson presented calculations by an expert who reviewed data from the timekeeping system and found that approximately 60 percent of the shifts during the relevant time period were at issue. See 2011 WL 4928753, at *3-4. Here, defendant

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 17-7574 FMO (FFMx)** | Date | **July 31, 2018** |
|---|---|---|---|
| Title | **Ani Amirian v. Umpqua Bank** | | |

"[t]he Court disregards the argument that the existence of other class actions in federal court somehow demonstrates jurisdion. The Court is basing its ruling solely on the allegations in this Complaint and the evidence submitted." Vasquez v. Blue Cross of Cal., 2015 WL 2084592, *5 (C.D. Cal. 2015) (internal citation omitted). The allegations and supporting evidence in each case are unique and, just as some courts have found it reasonable to assume a 100% violation rate based on allegations similar to those in this case, other courts have found those allegations insufficient to support a 100% violation rate. See, e.g., Garcia v. Lifetime Brands, Inc., 2016 WL 81473, *3 (C.D. Cal. 2016) (rejecting use of 100% violation rate based on allegations in the complaint that defendant employed "a uniform policy and systematic scheme of wage abuse, and that it denied meal and rest periods at all material times") (internal quotation marks omitted); Garcia, 207 F.Supp.3d at 1120-23 (rejecting use of 100% violation rate based on allegations in the complaint that defendant employed a "uniform policy of and systematic scheme of wage abuse" that was in place "[a]t all material times"); see also Duberry v. J. Crew Grp., Inc., 2015 WL 4575018, *3 (C.D. Cal. 2015) ("The cases venturing into this murky area are not all of one mind."). In the absence of evidence regarding how many class members were not allowed to take meal and rest periods, how many were not paid in a timely manner after termination, and how many otherwise were not paid for all hours work, the court has no basis from which to infer a 100% violation rate. See, e.g, Roth, 799 F.Supp.2d at 1126 ("Nor have defendants adduced evidence that would permit the court to draw an inference that these violations occurred with the frequency defendants presume[.]"); Moreno, 2014 WL 1154063, at *5 ("Defendants do not provide any support of a 100% violation rate, such as evidence based on their records or a random sampling."); Johnson v. Sunrise Sr. Living Mgmt., Inc., 2015 WL 3830291, *7-9 (C.D. Cal. 2015) (holding that defendant failed to meet its burden "to provide evidence justifying [the] use of the full thirty-day statutory maximum" in calculating the amount in controversy for a waiting time penalty claim); Weston v. Helmerich & Payne Int'l Drilling Co., 2013 WL 5274283, *6 (E.D. Cal. 2013) ("Because Defendant fails to provide any facts supporting the calculations based upon 100% violations, Defendant has failed to carry the burden to demonstrate by a preponderance of the evidence that the amount of damages in controversy exceeds $5,000,000.")

In any event, the court is not persuaded that the allegations in the Complaint are sufficient to support defendant's assumptions and calculations.[6] As the Garcia court noted, "the allegations at issue here – that the defendant employs a 'uniform policy . . . of wage abuse,' . . . are notably

---

has not presented any evidence on which to base its assumptions of the violation rates. Finally, the court does not agree with Muniz and, in any event, that court noted that "even assuming far less than a 100% violation rate still results in an amount in controversy that exceeds the jurisdictional minimum because the amount in controversy is estimated to be $12,932,861[.]" 2007 WL 1302504, at *4.

[6] This is made even more apparent when one takes into account the insufficiency of the evidence submitted by defendant to justify its 100% violation rate.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 17-7574 FMO (FFMx)** | Date | **July 31, 2018** |
|---|---|---|---|
| Title | **Ani Amirian v. Umpqua Bank** | | |

similar in form and substance to the allegations at issue in Ibarra." 2016 WL 81473, at *3. Under the circumstances, the court is not persuaded that the language in the Complaint, (see Dkt. 1-1, Complaint at ¶ 27) (e.g., "uniform"), is materially different for purposes of assessing the amount in controversy from the language in Ibarra, 775 F.3d at 1198-99 (e.g., "pattern and practice"). See Garcia, 2016 WL 81473, at *3; Garcia, 207 F.Supp. at 1124. Here, as in Ibarra, nothing in the Complaint "allege[s] that [defendant] universally, on each and every [week or pay period]," 775 F.3d at 1199, violated labor laws with respect to overtime, meal and rest periods, or wage statements, and thus waiting time penalties.

In a class action, it is not necessary for a class representative to establish that the class members were universally denied a right (e.g., minimum wage, breaks, etc.) to which they are entitled under the California Labor Code to obtain class certification. In other words, class proponents are not required to establish the universal application of an allegedly illegal policy; rather, a class representative need only show a consistent application of the challenged policy or practice. See Alberts v. Aurora Behavioral Health Care, 241 Cal.App.4th 388, 409 (2015). Thus, the most reasonable reading of plaintiff's allegations is not that defendant failed to pay overtime during every pay period or that plaintiffs did not receive two meal or rest periods every week, but rather that defendant had a policy, which was in place at all material times, that led to plaintiffs being underpaid to some degree. Here, the Complaint does not allege that plaintiffs never took meal or rest breaks, were never paid for overtime, or that there were never pay periods in which they were properly paid and their wage statements correctly reflected hours worked. (See, generally, Dkt. 1-1, Complaint). The Complaint simply does not set forth how often such violations occurred, nor has defendant presented, as noted above, any competent evidence regarding the frequency of the alleged violations.

Finally, defendant finishes its calculation by adding attorney's fees in the amount of 25% of their damages figures. (See Dkt. 1, NOR at ¶ 24). "[C]ourts are split as to whether only attorneys' fees that have accrued at the time of removal should be considered in calculating the amount in controversy, or whether the calculation should take into account fees likely to accrue over the life of the case." Hernandez v. Towne Park, Ltd., 2012 WL 2373372, *19 (C.D. Cal. 2012) (collecting cases); see Reames v. AB Car Rental Servs., Inc., 899 F.Supp.2d 1012, 1018 (D. Or. 2012) ("The Ninth Circuit has not yet expressed any opinion as to whether expected or projected future attorney fees may properly be considered 'in controversy' at the time of removal for purposes of the diversity-jurisdiction statute, and the decisions of the district courts are split on the issue."). The court is persuaded that "the better view is that attorneys' fees incurred after the date of removal are not properly included because the amount in controversy is to be determined as of the date of removal." Dukes v. Twin City Fire Ins. Co., 2010 WL 94109, *2 (D. Ariz. 2010) (citing Abrego Abrego, 443 F.3d at 690). Indeed, "[f]uture attorneys' fees are entirely speculative, may be avoided, and are therefore not 'in controversy' at the time of removal." Id.; accord Palomino v. Safeway Ins. Co., 2011 WL 3439130, *2 (D. Ariz. 2011). Here, defendant provides no evidence of the amount of attorney's fees that were incurred at the time of removal. (See Dkt. 1, NOR at ¶ 24; Dkt. 15, Opposition at 22-23). Indeed, defendant inexplicably changes the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 17-7574 FMO (FFMx)** | Date | **July 31, 2018** |
|---|---|---|---|
| Title | **Ani Amirian v. Umpqua Bank** | | |

amount of attorney's fees it speculates are in controversy in this case, from $519,706 in the NOR to $350,141 in the Opposition. (Compare Dkt. 1, NOR at ¶ 24, with Dkt. 15, Opposition at 22-23).

In sum, the court finds that defendant has failed to carry its burden to "demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." Rodriguez, 728 F.3d at 981; see Abrego Abrego, 443 F.3d at 685 ("[U]nder CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction."); Ibarra, 775 F.3d at 1197 ("[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions.").

Based on the foregoing, IT IS ORDERED that:

1. Plaintiff's Motion to Remand **(Document No. 10)** is **granted**.

2. The above-captioned action shall be remanded to the Superior Court of the State of California for the County of Los Angeles, 111 North Hill Street, Los Angeles, California 90012, for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c).

3. The Clerk shall send a certified copy of this Order to the state court.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | vdr | |